IN THE UNITED STATES
COURT OF FEDERAL CLAIMS
(BID PROTEST)

| | | |
|---|---|---|
| CMS CONTRACT MANAGEMENT SERVICES, and THE HOUSING AUTHORITY OF THE CITY OF BREMERTON, | ) ) ) ) ) | No. |
| | ) | COMPLAINT |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiffs CMS Contract Management Services and the Housing Authority of the City of Bremerton (collectively "CMS"), by and through their undersigned attorneys, hereby submit this Complaint and state and allege as follows:

## NATURE OF THIS ACTION

1.      This is an action by an interested party objecting to the procurement decision by the U.S. Department of Housing and Urban Development (HUD), pursuant to its Fiscal Year 2012 Notice of Funding Availability for the Performance-Based Contract Administrator Program, to utilize an unlawful "cooperative agreement" process to procure contractors for the administration of Project-Based Section 8 Housing Assistance Contracts.   This action seeks declaratory and injunctive relief.   HUD's procurement decision in this matter is improper because it violates

1

mandatory federal procurement regulations, HUD's own procurement policies, is contrary to GAO's direct guidance on the issue, and its decision has been taken in an arbitrary and capricious manner with the result of direct damage to interested parties.   This bid protest Complaint has been initiated prior to HUD's actual award of contracts under the NOFA at issue, thereby allowing for judicial relief without disturbing executed contracts.

## JURISDICTION

2.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. sec. 1491(b)(1).   There is no previous or pending related case in another court or a board of contract appeals, although other similarly-situated interested parties are likely to initiate actions against HUD in this Court on the same matter.

## PARTIES

3.      The Housing Authority of the City of Bremerton is a Public Housing Agency as defined under 42 U.S.C. sec. 1437a(b)(6)(a).   CMS Contract Management Services is a non-profit instrumentality of the Housing Authority of the City of Bremerton, and was established in 2011 to exercise essential governmental functions on behalf of the Housing Authority, including the administration of the HUD contract program at issue in this case.

4.      The United States has acted in this matter through the Department of Housing and Urban

2

Development, and specifically HUD's Office of Housing Assistance and Contract Administration Oversight. The contracting officer for the procurement at issue is Mr. Kerry E. Hickman, 451 7th Street SW, Room 6151, Washington D.C. 20410.


# BACKGROUND

5.      The federal government's Project-Based Section 8 Rental Assistance Program, created by The Housing Act of 1937, is administered by HUD and provides affordable housing for eligible low-income households (42 U.S.C. sec 1437f (2006)). The program provides for the payment of a rental subsidy to property owners on behalf of low-income tenants residing within those properties. The rental subsidy is attached to a specific dwelling, and the amount of the subsidy is generally the difference between the total rental amount for the dwelling and 30 percent of the tenant's adjusted income.


6.      The agreements between the government and the rental property owners for payment of the rental subsidy under the Project-Based Assistance Program are known as Housing Assistance Payment Contracts ("HAP contracts"). HUD is the funding agency for HAP contracts.


7.      Between 1974 and 1999, HUD administered approximately 21,000 HAP contracts using HUD staff and resources. In 1999, due to staffing constraints and efficiency issues, HUD began an initiative to contract out the oversight and administration of most of its HAP contracts within the Project-Based Section 8 Rental Assistance Program. HUD announced it would issue

51263561.1

Requests for Proposals ("RFP") for outside contractors to administer HUD's portfolio of HAP contracts.

8.     HUD issued its first RFP in May of 1999, stating that HUD was "seeking sources interested in providing contract administration services for project-based (HAP) Contracts under Section 8." (Federal Register Notice, May 19, 1999/RFP).   The RFP explained that HUD administered approximately 21,000 HAP contracts, and that the "RFP covers contract administration for most of these HUD administered contracts."   A copy of HUD's 1999 RFP is attached at Exhibit 1.

9.     The RFP included a detailed statement of work requiring (among other things) that successful proposers monitor project owners' compliance with their obligation to provide decent, safe, and sanitary housing; pay property owners accurately and timely; submit required documentation to HUD; and comply with HUD regulations and requirements governing the administration of HAP contracts.   These were activities that HUD previously performed with its own staff and resources to administer the program.

10.     HUD initially awarded 37 contracts pursuant to the 1999 RFP.   The selected contractors are known as Performance-Based Contract Administrators ("PBCAs"). The contracts between HUD and the PBCAs for administrative services are known as Performance-Based Annual

51263561.1

Contribution Contracts, which HUD refers to as "ACCs"[1].  HUD awarded seven more ACCs between 2001 and 2004, and nine more between 2003 and 2005.

11.     Through these procurements, Plaintiffs CMS became the PBCA for Washington, Utah, Nebraska, and the subcontractor for Hawaii and Southern California.  A copy of CMS' ACC agreement for providing PBCA services in Washington is attached at Exhibit 2; a copy of the 2012 extension of this contract is attached at Exhibit 3.  In accordance with the Federal Grant and Cooperative Agreement Act of 1977, HUD's ACC agreements with PBCAs have been considered procurement contracts since the inception of the PBCA program in 1999.

12.     In February of 2011, HUD began another competition for HAP contract administration services.  The responsibilities to be undertaken by PBCAs under this procurement were substantially similar to those in the original 1999 procurement.

13.     After issuing the 2011 solicitation for PBCA services, HUD received 66 protests of its decisions regarding ACC contracts in 42 states.  As a result, HUD announced that it would retract the solicitation and not issue new ACC contracts in those states, and that it would "evaluate and revise its competitive award process" for the selection of PBCAs.

---

[1] CMS does not believe "ACC" is the proper legal term for these contracts, as ACCs are typically used for other purposes within federal procurements.  However, since HUD refers to the agreements at issue as "ACCs", that term will be utilized in this Complaint for the sake of clarity and consistency among the pleadings.

5

## HUD'S 2012 PBCA PROCUREMENT AND NOFA

14.    On March 9, 2012, HUD issued a Fiscal Year 2012 Notice of Funding Availability

(NOFA) for the Performance-Based Contract Administrator Program.  A copy of HUD's 2012

NOFA is attached at Exhibit 4.

15.    The NOFA provides for the awards of ACCs to agencies to serve as PBCAs for HAP

contracts in the 42 states that were contested in 2011.  The requirements and responsibilities of

the PBCAs are the same in all material respects to those of the ACCs under HUD's previous

procurements dating back to 1999.

16.    The most significant difference between the 2012 NOFA and HUD's previous PBCA

procurements – and the difference that gives rise to this legal action – is that the NOFA expressly

provides that the "ACCs HUD seeks to award via this NOFA are cooperative agreements."

Under all previous PBCA contracting, the ACCs were awarded as procurement contracts.  HUD

also further limited the competitiveness of the intended procurement by stating in the NOFA:

**HUD will consider applications from out-of-State applicants only for States**

**for which HUD does not receive an application from a legally qualified in-**

**State applicant.  Receipt by HUD of an application from a legally qualified**

**in-State applicant will result in the rejection of any applications HUD**

**receives from an out-of-State applicant for that state.**

Given that most states have an agency that is legally qualified to receive an ACC contract – even

if that agency has no experience or other qualifications for actually providing PBCA services –

6

HUD's NOFA effectively eliminated competition completely in most states.  HUD also thereby eliminated the ability of CMS and similarly-situated PBCAs to compete and provide services outside their home states, even when they have a proven track record of providing effective PBCA services in those areas.

### HUD'S UNLAWFUL ATTEMPT TO USE COOPERATIVE AGREEMENTS

17.    The Federal Grant and Cooperative Agreement Act (FGCAA) provides the criteria federal agencies must follow in deciding the form of contract to use when entering into a funding relationship with a state, local municipality, or other recipient for an authorized purpose.  31 U.S.C. sec. 6301-6308 (2006).  These criteria apply to HUD's ACC contracting with PBCAs.

18.    The FGCAA provides that federal agencies must use procurement contracts when "the principal purpose of the instrument is to acquire (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government".  31 U.S.C. sec. 6303. The Federal Acquisition Regulations contain corresponding provisions with this same requirement.  FAR sec. 35.003(a).

19.    The FGCAA provides for the use of cooperative agreements when the principal purpose of the agreement "is to transfer a thing of value to the State, local government, or other recipient to carry out a public purpose of support or stimulation authorized by law of the United States instead of acquiring (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government", and "substantial involvement is expected between the

7

executive agency and the State, local government, or other recipient when carrying out the activity contemplated in the agreement." 31 U.S.C. sec. 6305.

20.    To clarify the proper utilization of procurement contracts versus cooperative agreements, the GAO has stated: "the use of a grant or cooperative agreement is appropriate if the principal purpose of the agreement is to provide assistance to the recipient to accomplish a public objective authorized by law.  In contrast, if the federal agency's principal purpose is to acquire goods or services for the direct benefit or use of the federal government, then a procurement contract must be used."  A copy of the GAO Decision on this matter is attached at Exhibit 5; the quote is found on page 10.

21.    For ACCs with PBCAs, HUD is required to utilize a procurement contract.  HUD is acquiring the services of the PBCAs to administer the HAP contracts for the benefit of the federal government.  Indeed, the PBCAs are doing a job HUD previously did with its own forces for the benefit of its own program, but that HUD now must contract out to service providers in order to maintain the necessary program efficiency.  HUD's attempt in the 2012 NOFA to reclassify these service procurements as "cooperative agreements" is a clear violation of 31 U.S.C. sec. 6303 and FAR sec. 35.003(a).

## BID PROTESTS AND GAO REVIEW OF HUD'S 2012 NOFA

22.    When HUD's 2012 NOFA was issued, numerous interested parties including plaintiffs CMS filed bid protests to contest HUD's unlawful attempt to reclassify the ACCs as cooperative

agreements. The GAO reviewed the protests and issued its Decision on August 15, 2012. A copy of the GAO Decision is attached at Exhibit 5.

23.     The GAO's summary of its analysis of HUD's actions within the 2012 NOFA is succinct: "we conclude that HUD's issuance of a NOFA providing for the award of cooperative agreements was unreasonable and in disregard of applicable statutory guidance. We also conclude that HUD is required to use a procurement instrument that results in a contract in order to obtain the provision of contract administration services by PHAs for the Project-Based Section 8 HAP contracts." See Exhibit 5, page 14.

24.     Despite the GAO's clear and correct determination that HUD is required to utilize procurement contracts for ACCs with the PBCAs, HUD has chosen to ignore its legal obligations and attempt to proceed with utilizing "cooperative agreements". A copy of HUD's official statement of its decision is attached at Exhibit 6. HUD's unlawful, arbitrary, and capricious decision has compelled CMS to initiate this legal action to obtain injunctive relief and prevent HUD's illegal procurement action.

## PREJUDICE, HARM, AND RELIEF

25.     CMS is the current PBCA for Washington, Utah, Nebraska, and the subcontractor for Hawaii and Southern California. CMS' five PBCA inventories total over 74,600 housing units throughout its contracted regions. CMS intends to enter into future ACCs with HUD for these

9

and other jurisdictions.

26.     The prejudice to CMS (and other similarly-situated PBCAs) in HUD's attempted use of "cooperative agreements" is substantial.  Procurement contracts are governed by the Competition in Contracting Act of 1984 (CICA), whereas legally-authorized cooperative agreements are not. CICA requires full and open competition for federal contracts, and allows potential PBCAs to compete for ACCs in jurisdictions throughout the United States.  The FGCAA also encourages "competition in making grants and cooperative agreements."  Conversely, HUD's attempted use of so-called "cooperative agreements" in the 2012 NOFA includes a scheme whereby competition within a given state will be limited to only agencies located within that state.  Under HUD's proposed scheme, in most cases there will be no competition at all, since the program is designed to award the ACC to the resident Public Housing Agency to the exclusion of any other bidders.

27.     With a fair and equitable PBCA competition as required under CICA for procurement contracts, the reality of CMS qualifying for and being awarded ACC contracts in numerous states is very likely.  CMS is a viable competitive entity in the current states it administers, as well as in other states where HUD will conduct competitions for future PBCA contracts.  CMS entered into its first ACC with HUD in 2000, and for more than 11 years as a PBCA CMS has undertaken tasks in compliance with its ACC agreements with a performance success rate of over 99.99%.

10

28.     HUD's decision to utilize the 2012 NOFA to obtain ACC services through "cooperative agreements" without utilizing the legally-required procurement contracts had prejudicial errors as described above.  It violated applicable federal procurement statutes and regulations, HUD policies, lacked a reasonable basis, and was arbitrary and capricious.

29.     A declaratory judgment and injunction requiring proper enforcement and implementation of laws, regulations, and legally-required procurement processes will provide a conclusive and practical resolution of this controversy.

30.     HUD will suffer no injury, loss, or inconvenience by virtue of this Court's issuance of an injunction.  Indeed, HUD had originally planned to extend the existing contracts well into 2013, and as far out as December 31, 2014, and there would be no discernable harm from maintaining that status quo.

31.     In contrast, without an injunction barring HUD's unlawful 2012 NOFA, CMS will suffer irreparable injury.  It will lose the contracts it has been administering successfully for years on behalf of HUD, it will lose the fee revenue associated with those contracts, and it will lose the ability to reasonably and fairly compete for future contracts in the out-of-state jurisdictions where it currently administers HUD programs.  CMS will have to cut housing services if HUD's unlawful and improper procurement decision is not halted and corrected.

WHEREFORE,  Plaintiffs respectfully request that this Court enter judgment in their favor against Defendant as follows:

1.     Declare unlawful the procurement process (and any potential contract award) under HUD's 2012 NOFA;

2.     Order HUD to cancel the NOFA solicitation and conduct the procurement again in accordance with law, and to make new and proper vendor selections under procurement contracts; or alternatively

3.     In the event the Court determines that HUD can in fact utilize a cooperative agreement to procure PBCA services, to order HUD to cancel the 2012 NOFA solicitation and conduct the procurement again in accordance with law (and without arbitrary restrictions on competition), and to make new and FGCAA-compliant vendor selections for the cooperative agreements;

4.     Award Plaintiffs their costs and reasonable attorney legal fees in this action as allowed by law; and

5.     Grant such other and further relief as the court determines just and appropriate.

51263561.1

DATED this 7th day of December, 2012.

FOSTER PEPPER PLLC

W. Gregory Guedel, WSBA #24150
Colm P. Nelson, WSBA #36735
1111 Third Avenue
Suite 3400
Seattle, WA 98101
Phone:  206-447-4400
Fax:  206-447-9700
Attorneys for Plaintiffs

Attachments:

Exhibit 1 – HUD 1999 RFP for PBCA Services

Exhibit 2 – HACB ACC Agreement for PBCA Services

Exhibit 3 – November 2012 Extension of ACC Agreement for PBCA Services

Exhibit 4 – HUD 2012 NOFA

Exhibit 5 – GAO Bid Protest Decision

Exhibit 6 – HUD Notice of Intent to Proceed with Cooperative Agreements